IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JANIS SPENCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-06-14-HE |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner, Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Janis Spence ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for further proceedings.

**Administrative Proceedings**

Plaintiff initiated these proceedings in April, 2002, with her application seeking disability insurance benefits, alleging that she suffered from neck and back injuries as a result of a fall as well as from vision problems in her right eye and claiming that these conditions became disabling as of April 10, 2001 [Tr. 61 - 63 and 70]. Plaintiff's claims were denied initially and upon reconsideration [Tr. 32 - 34 and 37 - 38]; an Administrative Law Judge ("ALJ") then conducted a February, 2004, hearing where Plaintiff, who was represented by counsel, a medical expert and a vocational expert testified [Tr. 284 - 317]. In his January,

2005, decision[1] the ALJ found that Plaintiff was not disabled as of December 31, 2002 – the date on which she was last insured for disability benefits – because, although she was unable to perform her past relevant work, she retained the ability to perform work available both regionally and nationally [Tr. 16 - 28].[2] The Appeals Council of the Social Security Administration declined Plaintiff's review request, and Plaintiff subsequently sought review of the Commissioner's final decision in this court [Tr. 6 - 9].

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

---

[1] Although both the hearing decision and the ALJ's notice to Plaintiff of that decision bear the mechanically stamped date of January 26, *2004* [Tr. 13 and 28], the Notice of Appeals Council Action shows that the decision was actually rendered on January 26, *2005* [Tr. 6].

[2] With respect to Plaintiff's capacity to perform her past relevant work, the ALJ correctly noted in the body of his hearing decision that the vocational expert testified that Plaintiff could return to her past relevant work as a bookkeeper [Tr. 25]. Nonetheless, and without explanation, the ALJ specifically concluded in the "Findings" portion of the decision that Plaintiff was unable to perform any of her past relevant work [Tr. 27].

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). The Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Where Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner,* 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). In this case, the ALJ specifically determined that Plaintiff was unable to perform her past relevant work and continued the sequential inquiry through the final step.

**Plaintiff's Claims of Error**

As her initial claim of error, Plaintiff maintains that the ALJ improperly rejected the opinion of a consultative examining psychologist concerning Plaintiff's mental functional limitations. Next, Plaintiff argues that the ALJ's decision is erroneous because there is no evidence with regard to skills acquired by Plaintiff in her past work to support the finding that she could perform the semiskilled occupations identified by the ALJ as suitable for Plaintiff at step five of the sequential process. Finally, it is Plaintiff's contention that the

hypothetical question posed to the vocational expert did not accurately set forth the functional lifting limitations that the ALJ determined were appropriate for Plaintiff.

Because remand is required in order that Plaintiff's mental functional restrictions can be properly considered, and because such consideration could necessarily impact Plaintiff's ability to perform semiskilled work, Plaintiff's second proposition of error will not be addressed. As to Plaintiff's third claim of error, the Commissioner claims that the ALJ simply misstated the lifting limitations in the written decision although he had stated them correctly in his hypothetical question to the vocational expert. The Commissioner concedes that "the ALJ's decision is not an example of procedural perfection" but argues that a deficiency in opinion writing is harmless error [Doc. No. 17, p. 9]. On remand, the ALJ will have the opportunity to eliminate inconsistencies in the written decision that, on review, make it difficult if not impossible to discern the ALJ's intended findings.

**Plaintiff's Mental Limitations**

While it does not appear from her administrative filings that Plaintiff claimed any functional limitation as a result of a mental impairment,[3] the ALJ announced during the course of the administrative hearing that, "I'm going to send you to a psychologist for a psychological examination with a WAIS-3, an MMPI and a clinical interview." [Tr. 303 - 304]. Consequently, Plaintiff was evaluated on June 14, 2004, by R. Keith Green, Ph.D., who described both the nature of the consultation and the methods he employed in conducting the psychological evaluation:

> [Plaintiff] was referred by the Disability Determination Division, Office of Hearings and Appeals, for a psychological evaluation consisting of behavioral

---

[3] As to Plaintiff's physical impairments, the ALJ concluded that she suffered from degenerative disc disease, history of chronic knee pain and epicondylitis, possible TMJ disorder, and central retinal vein occlusion of the right eye resulting in monocular blindness [Tr. 27].

>
> observations, case history interview, completion of "Assessment of Ability to Engage in Work-Related Activities (Mental)", and the administration of the following psychodiagnostic tests: Mental Status Examination, Wechsler Adult Intelligence Scale, Third Edition (WAIS-III), and the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). As an aid in completing hearings form, a battery of questionnaires and rating forms were administered, such as: The West Haven-Yale Multidimensional Pain Inventory; Ability to Participate in Activities of Daily Living Form; and Personal and Medical History Form.

[Tr. 263].

Dr. Green's diagnostic impression following his evaluation of Plaintiff was Pain Disorder Associated with Both Psychological Factors and a General Medical Condition, Adverse Effects of Medication NOS, and Borderline Intellectual Functioning [Tr. 268]. In completing the Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Green found, in part, that Plaintiff's ability to understand, remember, and carry out detailed instructions was moderately affected by her impairment [Tr. 270]. This is of particular significance due to the conclusion of the vocational expert on review of these findings that *all* of the jobs she had previously identified at the hearing as suitable for Plaintiff "would be excluded based on a full scale I.Q. of 75 and a moderately impaired ability to understand, remember, and carry out detailed instructions." [Tr. 106].

The ALJ subsequently issued his decision in which he "specifically finds that the claimant did not have a severe mental impairment on or prior to December 31, 2002[,]" [Tr. 18], and in which he determines that Plaintiff was not disabled because she retained the capacity to perform the jobs identified by the vocational expert at the hearing [Tr. 26]. Addressing Dr. Green's diagnoses, the ALJ stated

> As noted by Dr. Green, the claimant has no past history of mental impairment. Moreover, the claimant's reported history of being a B and C student in regular classes through the 11th grade, with a subsequent GED, is not consistent with borderline intellectual functioning. Likewise, the claimant's reported work history, comprising semiskilled work as a retail sales clerk and bookkeeper,

5

> certainly is inconsistent with borderline intellectual functioning, all of which raises the question of possible malingering by the claimant in connection with the evaluation by Dr. Green. The undersigned notes that the claimant advised Dr. Green that she had been diagnosed with breast cancer and that she apparently has asserted side effects from chemotherapy. It is possible that the apparent memory problems reported might have been secondary to side effects from chemotherapy. However, the undersigned notes that the latter must be a relatively recent occurrence, as neither the diagnosis of breast cancer nor chemotherapy was mentioned by the claimant at the hearing. Moreover, the claimant did not demonstrate any significant memory problems at the hearing. Rather, the claimant's testimony at the hearing was quite coherent, and she did not demonstrate any significant difficulty remembering past events.
>
> For all of the foregoing reasons, the undersigned is of the opinion that the claimant did not have a severe mental impairment on or prior to December 31, 2002.

[Tr. 23].

Plaintiff maintains that the ALJ erred by substituting his lay opinion of Plaintiff's condition for that of Dr. Green, a qualified medical expert. In response, the Commissioner argues that the ALJ properly determined that Plaintiff did not have a severe mental impairment prior to December 31, 2002, the date on which she was last insured for disability benefits. In support of her argument, the Commissioner contends the burden was on Plaintiff to provide medical evidence establishing that she had a severe mental impairment prior to December 31, 2002, and that for the following reasons Dr. Green's diagnosis of borderline intellectual functioning a year and a half after the date-last-insured did not serve to provide the requisite evidence: (1) Plaintiff had not alleged any mental difficulties prior to December 31, 2002; (2) Plaintiff had been recently diagnosed with breast cancer and was undergoing chemotherapy at the time of her June of 2004 evaluation by Dr. Green; (3) Plaintiff complained throughout the evaluation of the adverse effect chemotherapy had on her ability to think and remember and apologized for her resulting performance on the various tests; and, (4) Dr. Green recognized that Plaintiff had side effects from her medication.

In addition, the Commissioner maintains that the ALJ properly focused on Plaintiff's functional limitations rather than on a mere diagnosis and, based on the following evidence of record, could not find that Plaintiff suffered from borderline intellectual functioning prior to December 31, 2002: (1) the disability interviewer found that Plaintiff had no difficulty with understanding, coherency or concentration; (2) upon examination in May, 2001, Plaintiff appeared well, alert and oriented, and she had appropriate psychiatric findings; and, (3) as noted by the ALJ, Plaintiff's school and work history are inconsistent with a diagnosis of borderline intellectual functioning prior to December 31, 2002.

The Commissioner correctly argues that in order for Plaintiff to be entitled to disability benefits due to a severe mental impairment, the evidence of record must establish that Plaintiff was functionally limited by such mental impairment prior to December 31, 2002, the date on which she was last insured for disability benefits. *See* 20 C.F.R. § 404.131.  While the Commissioner is also correct in contending that the burden is, in general, on Plaintiff to prove that she is disabled, *see* 20 C.F.R. § 404.1512 (a), Social Security regulations provide that, "In deciding whether [a claimant is] disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527 (b).  The regulations further establish that such medical opinions may be contained in "[e]vidence that you submit *or that we obtain.*"  *Id.* at § 404.1527 (a) (2) (emphasis added).  Thus, even though Plaintiff did not proffer evidence to establish that she was disabled as a result of a mental impairment (and, in fact, never claimed that she suffered from a mental impairment), consideration of Dr. Green's medical opinion given at the behest of the ALJ was required in determining whether Plaintiff was disabled or restricted as a result of a mental impairment.  The question for resolution is whether the ALJ properly rejected Dr.

Green's evaluation – the only evidence of record from an acceptable medical source regarding Plaintiff's mental status.

In rejecting Dr. Green's opinions, the ALJ did nothing more than engage in second-guessing and speculation. For example, the ALJ notes that "the claimant's reported history of being a B and C student in regular classes through the 11th grade, with a subsequent GED, is not consistent with borderline intellectual functioning." [Tr. 23]. Dr. Green, a licensed professional, armed with this same history, [Tr. 264], nonetheless concluded in his expert opinion that Plaintiff did, in fact, suffer from borderline intellectual functioning [Tr. 268]. Likewise, the ALJ found Plaintiff's previous semiskilled work to be inconsistent with the diagnosis, and determined that both of these inconsistencies "raise[d] the question of possible malingering by the claimant in connection with the evaluation by Dr. Green." [Tr. 23]. Once again, this is simple speculation by the ALJ; Dr. Green, the trained psychologist who tested Plaintiff, made just the opposite finding in concluding that, "Overall, Janis appeared to put forth her best efforts, though there is the possibility of adverse medication effects." [Tr. 266].

With respect to possible side effects of medication, the other tack employed by the ALJ in rejecting Dr. Green's opinions was to speculate that "it is possible that the apparent memory problems reported might have been secondary to side effects from chemotherapy." [Tr. 23]. Because Plaintiff's breast cancer had not been previously reported, the ALJ then assumed that all of her "memory" problems were of recent vintage and that she did not have a severe mental impairment on or prior to December 31, 2002. *Id.* Nonetheless, even if some of Plaintiff's memory difficulties could be ascribed to chemotherapy treatment that not did occur until after the expiration of her insured status, the ALJ completely ignored Dr. Green's

primary diagnosis of Pain Disorder Associated with Both Psychological Factors and a General Medical Condition [Tr. 268].

In support of his findings that Plaintiff was moderately impaired in her ability to understand, remember and carry out detailed instructions – a restriction that the vocational expert subsequently stated would eliminate any of the work she had identified at the administrative hearing [Tr. 106] – Dr. Green noted that Plaintiff had "[d]ifficulty carrying out (& retaining) more complex instructions during mental status exam. (see narrative)." [Tr. 270]. In that narrative discussion, Dr. Green, who had noted Plaintiff's description of near constant neck and back pain [Tr. 265], concluded that, "Abstract reasoning, thus, fluctuates in quality [and] [p]erformance on the Mental Status Exam is indicative of a somatoform disorder, that of chronic pain with emotional components and an adverse effect of medication, that of compromising memory, particularly immediate recall." [Tr. 266].  Thus, it is apparent from Dr. Green's report that the adverse effect of medication, including chemotherapy, was only one of several factors impacting the psychologist's determination of Plaintiff's functional limitations.

The ALJ improperly substituted his own lay opinion for the only medical opinion of record regarding Plaintiff's mental functional restrictions, *see Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996); consequently, the ALJ's decision must be reversed and the matter remanded for further administrative consideration.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, it is recommended that this matter be reversed and remanded for further proceedings in accordance with this report. The parties are advised of their right to object to this Report and Recommendation by January 25, 2007, in accordance with 28 U.S.C. §636 and Local Civil Rule 72.1.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).   This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 5th day of January, 2007.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE